MEYERS v. SPANGENBERG & McLEAN CO.

(Supreme Court, Appellate Term. December 29, 1909.)

1. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—CERTIFICATE TO DO BUSINESS—CONTRACTS OF RECEIVERS.

Under General Corporation Law (Laws 1890, p. 1063, c. 563, as amended by Laws 1901, pp. 267, 1326, cc. 96, 538, and Laws 1904, p. 1250, c. 490) § 15, making void all contracts entered into by a foreign corporation within the state unless a certificate authorizing it to do business is obtained from the Secretary of State, contracts entered into by receivers of the corporation are valid, though the corporation did not comply with the section.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2540, 2552; Dec. Dig. § 657.*]

2. CORPORATIONS (§ 673*)—FOREIGN CORPORATIONS—CERTIFICATE TO DO BUSINESS—CONTRACTS—EVIDENCE.

On an issue as to the validity of a contract for the sale of goods, made with a foreign corporation which had not complied with General Corporation Law (Laws 1890, p. 1063, c. 563, as amended by Laws 1901, pp. 267, 1326, cc. 96, 538, and Laws 1904, p. 1250, c. 490) § 15, requiring a certificate from the Secretary of State authorizing it to do business, evidence held to show that the contract was made with the corporation, and not with its receivers, though the goods were delivered by them.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2650; Dec. Dig. § 673.*]

3. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—CONTRACTS—VIOLATION OF STATUTE—RIGHTS OF RECEIVERS.

Where a contract for the sale of goods, made with a foreign corporation, was void because of failure to comply with General Corporation Law (Laws 1890, p. 1063, c. 563, as amended by Laws 1901, pp. 267, 1326, cc. 96, 538, and Laws 1904, p. 1250, c. 490) § 15, requiring such corporation to take out a certificate authorizing it to do business, and after the sale and before delivery the corporation went into the hands of receivers, who took possession of its property and delivered the goods, there could be no recovery for the goods, on the theory of an implied contract with the receivers to pay for the goods received, arising out of the receipt and acceptance of the goods by the buyer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2542; Dec. Dig. § 657.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—VOID CONTRACTS—DEFENSE
   TO STATUTE.
.      General Corporation Law (Laws 1890, p. 1063, c. 563, as amended by
   Laws 1901, pp. 267, 1326, cc. 96, 538, and Laws 1904, p. 1250, c. 490) § 15,
   making void a contract for the sale of goods entered into by a foreign
   corporation which has not procured a certificate authorizing it to do busi-
   ness in the state, cannot be defeated by the contention that it is unjust to
   allow the buyer to escape payment for goods that he has received and re-
   tained.
       [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2542; Dec.
   Dig. § 657.*]

Appeal from Municipal Court, Borough of Manhattan, First Dis-
trict.

Action by Henry C. Meyers against the Spangenberg & McLean
Company. From a judgment dismissing the complaint, plaintiff ap-
peals. Affirmed.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Olney & Comstock (F. H. Van Houten, of counsel), for appel-
lant.

Kellogg & Rose, for respondent.

GIEGERICH, J.   The action is by the assignees of the receivers of
the Pennsylvania Tanning Company, a foreign corporation.   The
complaint, after alleging the appointment and qualification of Court-
right and others as receivers of the Pennsylvania Tanning Company,
a Pennsylvania corporation, alleges that between February 8, 1908,
and February 15, 1908, both dates inclusive, "the said receivers sold
and delivered to the defendant merchandise of the value and at the
agreed price" of $95.50.   It then alleges the assignment of the claim
to the plaintiff.   The answer admits the appointment and qualification
of the receivers, and denies all the other allegations of the complaint,
and sets up as a separate defense that prior to the appointment of the
receivers the defendant had entered into a contract with the Penn-
sylvania Tanning Company for the merchandise alleged by the re-
ceivers to have been sold by them after their appointment; that the
defendant never received or accepted any merchandise from the plain-
tiff, or the receivers of the Pennsylvania Tanning Company, except in
accordance with the contract; and, furthermore, that the latter, at the
time of the making of the contract, had not, in accordance with the
provisions of section 15 of the general corporation law, procured a
certificate from the Secretary of State that it had complied with all
the requirements of law to authorize it to do business within the state
of New York.

The Pennsylvania Tanning Company never obtained the certificate
from the Secretary of State pursuant to section 15 of the general cor-
poration law (Laws 1890, p. 1063, c. 563, as amended by Laws 1901,
pp. 267, 1326 cc. 96, 538, and Laws 1904, p. 1250, c. 490), and the de-
fendant contends that, since recovery was sought upon a contract made
within the state by a foreign stock corporation doing business herein,
the complaint was properly dismissed upon the merits by the trial jus-
tice because of the failure to comply with said provisions.   The said

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

section, so far as it was applicable when the transaction in suit arose, provided:

"Sec. 15. No foreign stock corporation other than a moneyed corporation shall do business in this state without having first procured from the Secretary of State a certificate that it has complied with all the requirements of law to authorize it to do business in this state, and that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state. * * * No foreign stock corporation in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such certificate. This prohibition shall also apply to any assignee of such foreign stock corporation and to any person claiming under such assignee or such foreign stock corporation, or under either of them."

The plaintiff, on the other hand, contends that the said section is not applicable, for the reason that the goods in question were sold by the receivers, and not by the Pennsylvania Tanning Company. It appears from the evidence that the latter was a foreign corporation organized and existing under the laws of the state of Pennsylvania, and had in January, 1908, an office for the transaction of business in New York City under the charge of one Richard D. Uhthoff. On or about January 12th of the same year Mr. Uhthoff had an interview with Mr. Spangenberg, the president of the defendant corporation, at its office in New York City, at which he stated that he represented the Pennsylvania Tanning Company, and he was given an order for 12 dozen tan skivers (the goods in suit), the price being fixed at $95.50. About 10 days after this, viz., on January 22d, three receivers were appointed in Pennsylvania for the Pennsylvania Tanning Company, who qualified and took possession of its property in the state of Pennsylvania on January 25th. Early in February Mr. Courtright, one of the receivers, came to New York City, and he testified that he took possession of the New York store, and appointed Uhthoff as the agent of the receivers to take charge of the merchandise in New York. He further testified:

"I then told him to ship this merchandise back to Great Bend. He told me that he could sell some of the merchandise, as the Pennsylvania Tanning Company had agreed to sell such merchandise to firms in New York, and that the firms in New York had agreed to take it, and that they would still take it. Among other parties that he mentioned was this concern of Spangenberg & McLean Company, the defendant herein. I directed him to retain enough merchandise to sell and deliver, among others, to this defendant, Spangenberg & McLean Company, and then left him in possession of the merchandise as representing us as receivers."

It is undisputed that one lot of the merchandise was delivered to the defendant on the 8th day of February, and the other on February 19th. Mr. Courtright further testified that after the delivery of the merchandise, and some time in the latter part of March, he called at the defendant's office. He could not remember who it was he saw there; but he knew that he called, and that the claim was not paid. He identified a statement, or a copy thereof, which he had with him at the time. Mr. Spangenberg, the defendant's president, testified that he did not see Mr. Uhthoff again until two or three weeks after he gave him the order for the skivers, and that he had to send for him; that he next

saw him on March 24th, when he came to his office, accompanied by a deputy sheriff, who had a warrant of attachment; that was the first he knew of the Pennsylvania Tanning Company being in the hands of receivers; that he did not at any time have any interview with Mr. Courtright, and never saw him; and that from the time he gave the order for the goods until the latter part of March, when the deputy sheriff came in with Mr. Uhthoff, he did not have any communication with anybody representing the Pennsylvania Tanning Company, or the receivers, with reference to this sale. The foregoing is in substance the entire testimony which was adduced relative to the question whether the contract was made with the above-named company, or with its receivers.

It is quite manifest that, if a new agreement with the receivers for the purchase of the goods could be shown, there would be no necessity for proving that a certificate had been procured in conformity with section 15 of the general corporation law, as would be the case if the contract was made with the Pennsylvania Tanning Company. But, even viewing the testimony in the most favorable light, no contract with the receivers, either express or implied, is shown. If the defendant had known of the appointment of the receivers, and had received the goods with such knowledge, there might be some basis for the contention that, notwithstanding the original contract of sale was made by the Pennsylvania Tanning Company with the defendant, there was an implied contract by the latter with the receivers. But, as already stated, it was more than a month after the delivery of the last lot of merchandise before the defendant company had the first notification of the appointment of the receivers. Since the merchandise was received in the regular course of business, it had the right to assume, in the absence of notice to the contrary, that it was delivered pursuant to the contract made on January 12th between the Pennsylvania Tanning Company and the defendant. The fact that Mr. Courtright at the end of March asked some one in the defendant's office for payment of the amount claimed to be due adds no strength to the plaintiff's case. Such demand was made long after the delivery and acceptance of the goods, and, besides, was only an act which the receivers would naturally have performed, had the goods been sold and delivered by the corporation prior to the appointment of the receivers.

The plaintiff argues that, upon the receipt and acceptance of the goods from the receivers, the defendant became liable directly to the receivers on an implied contract for the reasonable value thereof, even though the Pennsylvania Tanning Company made an agreement with the defendant to deliver the goods, and this, irrespective of whether or not they knew they were taking the goods from the receivers, and not from the party they originally contracted with, or, stated in another form, that the delivery of the goods by the receivers gave them a cause of action based upon the delivery and acceptance of the same for the reasonable value of the same. We do not think this distinction as to the form of the action is sufficient to defeat the intention of the statute. There can be no doubt that, when the receivers delivered the goods to the defendant, they, as successors to the Penn-

sylvania Tanning Company, were only completing the agreement made between that company and the defendant. Certainly that is all the defendant's officers supposed was being done when it received the goods. 'A meeting of the minds is essential to every contract. When one person accepts goods from another, the law implies from the acceptance an agreement on his part to pay the reasonable value therefor. But no such agreement could be implied from the acceptance by the defendant in this case, because it supposed the delivery was being made by the Pennsylvania Tanning Company pursuant to a prior agreement wherein the price had been agreed upon, and had no reason to suppose otherwise.

Our conclusion is that the only cause of action accruing to the receivers was the one based upon the agreement between the Pennsylvania Tanning Company and the defendant, which they, as receivers of such company, completed. As above shown, the statute expressly prohibits a recovery under the only contract upon which the receivers, or their assignees, were entitled to recover, and it follows that the complaint was properly dismissed.

The plaintiff complains that it is unjust to allow the defendant to escape payment for goods that it has received and retained. The same objection could be made in every case where this statute is enforced. The Legislature has imposed certain requirements upon foreign corporations as a prerequisite to carrying on business in this state. Until they comply with such requirements, they cannot do business here, except in violation of law. Wood & Selick v. Ball, 190 N. Y. 217, 225, 83 N. E. 21, 23. The will of the Legislature must be enforced. As was said in the case just cited:

"It is suggested that a recovery ought to be permitted, if possible, because the defendant had the goods, and it is equitable that she should be compelled to pay for them; but that which a statute prohibits is not equitable, and, as was said below, 'the logic of that suggestion might do away with the statute in every instance.'"

The judgment should therefore be affirmed, with costs. All concur.